UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ANTONIO MCKINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:25-cv-00365-SDN |
| | ) | |
| MAINE DEPARTMENT OF HEALTH | ) | |
| AND HUMAN SERVICES (DHHS), et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Antonio McKinney sued the Maine Department of Health and Human Services, some of its employees and attorneys, the judges of the Lewiston District Court, the Lewiston District Court itself, the governor of Maine, two Lewiston police officers, and two individuals Mr. McKinney alleges are the foster parents of his children.[1] His claims in this case all relate to a child custody dispute. Now, he moves for a temporary restraining order (TRO) and preliminary injunction. For the following reasons, his motion is denied.

## FACTUAL BACKGROUND

I draw these facts from all documents of "evidentiary quality" in the record, including affidavits. *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 223 (1st Cir. 2003); *see Calvary Chapel Belfast v. Univ. of Maine Sys.*, No. 24-cv-00392, 2025 WL 71701, at *1 (D. Me. Jan. 10, 2025). While Mr. McKinney's TRO itself does not include an affidavit, Fed. R. Civ. P. 65(b)(1); *see also Carey v. Town of Rumford*, No. 25-cv-00356, 2025 WL 1939899 (D. Me. July 15, 2025) (explaining procedural requirements for a TRO), Mr. McKinney attached an affidavit to his initial complaint. Mr. McKinney then

---

[1] Mr. McKinney's amended complaint appears to drop the judges, the court, and the governor as defendants.

1

filed an amended complaint on July 18, 2025. ECF No. 8. Though his amended complaint supersedes the initial complaint and does not include the affidavit again, because Mr. McKinney is pro se I will consider the affidavit from the original complaint as part of the record on this motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reiterating that courts must construe documents filed by pro se litigants liberally). However, because the amended complaint itself is not verified, it lacks evidentiary weight and I do not consider its allegations in deciding whether to grant the TRO. *See Rosario-Urdaz*, 350 F.3d at 223.

Mr. McKinney claims that on May 27, 2022, some of his children were taken from him in Massachusetts—by whom, he does not say—and placed into foster care in Maine. Then, on July 29, 2022, his newborn child was removed from his custody at Portland Hospital. Mr. McKinney claims that in both instances, he was not given notice of the pending removals or an opportunity to contest the separation prior to his children being removed from his custody.

However, according to the affidavit attached to his complaint, since that time Mr. McKinney has been a party to state court custody proceedings. He attended a hearing in the state court custody matter in November 2022, where he invoked his Fifth Amendment right not to testify. He claims the court in that proceeding unlawfully "treated [his] silence as 'interference'" and ruled against him. ECF No. 1-3 at 2. He also states that the appointed guardian *ad litem* and the assistant attorney general misrepresented facts to the court in those proceedings and "failed to recommend placement with available family members." *Id*. Mr. McKinney claims "no legal justification has been produced for the continued separation" of his children. *Id*.

2

**PROCEDURAL HISTORY**

Mr. McKinney sued in this Court on July 15, 2025, and moved for a TRO the same day. ECF Nos. 1, 4. Concerned that this Court may not have jurisdiction in light of the *Rooker-Feldman* doctrine,[2] I ordered Mr. McKinney to show cause as to why the Court has subject-matter jurisdiction. ECF No. 7. He responded to my Order to Show Cause in two separate filings, ECF Nos. 9–10. Mr. McKinney's response states the state court custody matter "remains open and unresolved." ECF No. 10 at 1. Because no state court judgment has been rendered, *Rooker-Feldman* does not bar federal court jurisdiction, *Lance v. Dennis*, 546 U.S. 459, 460 (2006), and I VACATE the Order to Show Cause.

In his motion for a TRO, Mr. McKinney asks the Court to enjoin the defendants from interfering with his constitutional rights, continuing the "out-of-home placement of [Mr. McKinney's] children without valid court orders," and denying Mr. McKinney visitation or contact with his children. Mr. McKinney also asks for an expedited hearing on his motion for a preliminary injunction, in which he seeks the immediate return of his children and a stay of state court custody proceedings.

**DISCUSSION**

Preliminary injunctive relief "is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8–9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). Of the two types of preliminary relief, a temporary restraining order "is an even more exceptional remedy than a preliminary injunction" because it can

---

[2] "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

be issued "without notice to the other party." *Graham v. Costello*, No. 21-CV-00258, 2021 WL 4205603, at *1 (D. Me. Sept. 15, 2021), *R&R adopted*, 2021 WL 4810326 (Oct. 14, 2021). For both types of relief, I must consider the same four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Calvary Chapel of Bangor v. Mills*, 459 F. Supp. 3d 273, 282 (D. Me. 2020) (quoting *Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006)). The movant bears the burden of showing that these factors weigh in their favor, *Esso*, 445 F.3d at 18, but the first factor holds the heaviest sway over the analysis. "If the moving party cannot demonstrate that [they are] likely to succeed in [their] quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) (quotation modified). In addition, when a plaintiff seeks a TRO without notice to the opposing party, the facts must "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b).

At this stage, Mr. McKinney does not demonstrate he is either likely to succeed on the merits or that immediate and irreparable harm is likely to occur before the defendants can be heard. First, state officials may sometimes remove a child from parental custody prior to a hearing; in such circumstances, the law mandates specific procedures state officials must follow afterward. *Hatch v. Dep't for Child., Youth & Their Fams.*, 274 F.3d 12, 20 & n.3 (1st Cir. 2001) (explaining that "[o]nce the state takes temporary custody of a child, it must follow procedures adequate to justify that detention," including a hearing). While Mr. McKinney claims his children were removed from his custody prior to a

4

hearing, he acknowledges that he attended a hearing after the removals. At the hearing, he had the opportunity to testify but chose not to. While Mr. McKinney claims the guardian *ad litem* and assistant attorney general misrepresented facts about his parenting to the court in those proceedings, he does not elaborate further. At this point, there is nothing to suggest that the procedure in Mr. McKinney's case was legally inadequate such that he is likely to succeed on the merits.

Second, on this limited record, I cannot conclude "that harm is likely to befall [Mr. McKinney] or the child[ren] if I allow time for service and a response." *Barronton v. Lambrew*, No. 19-cv-00215, 2019 WL 2125826, at *2 (D. Me. May 15, 2019). Mr. McKinney has not claimed any physical injury is likely to occur to either him or his children. Nor can I conclude that irreparable legal injury is likely to occur, given my conclusion that Mr. McKinney is not likely to succeed on the merits of his claim that the removal of his children was unlawful. Moreover, Mr. McKinney alleges his children were removed from his custody approximately three years ago which cuts against any suggestion of urgency or imminence.

Third, and significantly, because the state custody proceedings appear to be ongoing, this Court likely is required to abstain from hearing Mr. McKinney's case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). Except in rare and unusual circumstances not alleged here, federal courts cannot interfere with pending state proceedings. *Id.* at 43–45. "There is no question *Younger* principles apply to . . . state child custody action[s]" such as this one. *Malachowski v. City of Keene*, 787 F.2d 704, 708 (1st Cir. 1986). The record does not show that any of the "extraordinary circumstances" rendering *Younger* inapplicable are present here. *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 189, 192 (1st Cir. 2015) (listing exceptions). In particular, there is

5

no evidence to suggest the "state forum"—here, the state court child custody proceedings—"provides inadequate protection of federal rights." *Id.* at 192. Mr. McKinney explains that "[d]uring multiple hearings from 2022 through 2025" in the state court, he raised objections based on the Fourth and Fourteenth Amendments as well as the Interstate Compact on the Placement of Children. ECF No. 1 at 4. Mr. McKinney may appeal any perceived error within the state court system, which is well-equipped to address his federal claims. *See McLeod v. Me. Dep't of Hum. Servs.*, 229 F.3d 1133, 2000 WL 869512 at *1, (1st Cir. 2000) (unpublished table decision) (finding the "appellant has not alleged facts showing that the state court is somehow incapable of adjudicating this matter including the federal issues, nor has she alleged an injury that is different than that incidental to every child protection proceeding" in which state officers act in good faith (quotation modified)); *In re Child of Taylor M.*, 2025 ME 7, 331 A.3d 345 (evaluating federal law arguments on appeal of trial court's termination of parental rights); *In re Destiny H.*, 2024 ME 66, 322 A.3d 1183 (same). Mr. McKinney does not claim that the state court refused to permit him to raise his federal claims in that forum; therefore, I cannot conclude the state forum inadequately protects his federal rights. Accordingly, because *Younger* abstention is mandatory and none of the exceptions apply, this Court is unlikely to exercise jurisdiction. *Torre v. Dep't of Health & Hum. Servs.*, No. 2:25-CV-00342, 2025 WL 1902589, at *2 (D. Me. July 10, 2025), *R&R adopted*, 2025 WL 2084352 (July 24, 2025) (considering likelihood of *Younger* abstention in denying TRO related to a child custody matter).

For these reasons, Mr. McKinney is unlikely to succeed on the merits. Therefore, I find Mr. McKinney has not demonstrated that he is entitled a temporary restraining order or preliminary injunction. *Francisco Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st

Cir. 2009); *see also Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (emphasizing courts' "equitable discretion" to award or deny preliminary relief).

## CONCLUSION

For the foregoing reasons, I **DENY** the motion for a temporary restraining order and preliminary injunction.

**SO ORDERED.**

Dated this 5th day of August, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**
